EMMA DePAIGE, ROGER DeWOLF and J. WIL-LIAM CHILTON, Appellants, v. SAMUEL and DORMAN B. DOUGLAS.

### Division One, March 31, 1911.

1. **NO BRIEFS.** Respondents should brief their case. The rules so contemplate, and that is the course of wisdom and safety.

2. **TAX SALE: 960 Acres for $50 Taxes.** The sale of 960 acres of land to pay taxes amounting to $50 is a result challenging sharp and jealous judicial attention, and having no equitable feature persuasively appealing to a court of conscience, and if it is to receive judicial sanction it should come from the cold law and by not one jot or tittle more or less than the cold law of the case allows.

3. ————: **Corrected Deed: Relation.** A new and corrected sheriff's deed may be made by a sheriff, under the eye of the court, when the facts warrant; but it cannot be corrected in equity. When corrected in the statutory way, the corrected deed relates back to the sale, and by relation becomes effective from that time.

4. ————: **Possession: Limitations.** Where there is no actual possession by either party, possession is allowed to follow the true title constructively. And in such case, the rule that possession under a defective deed, as color of title, for the period of limitations, will cure the defects, does not apply.

5. ————: **Attempted Sale of Three Tracts: Conveyance of Only One.** Taxes became delinquent on three separate tracts of land, each of 320 acres, each separately assessed, the entire amount being $23.16. Suit was brought on constructive service against the owner, judgment was obtained, execution issued, and levy, advertisement and sale followed in due course. The deed describes the three tracts in consecutive order, and recites that the sheriff "did expose to sale, at public auction, the above described real estate, and Thomas McGlashan being the highest

bidder for" the three separately described tracts, amounting to "960 acres, for the sum of $220, the said last above described tract was stricken off and sold to the said Thomas McGlashan for the sum bid by him," and that, in consideration of the premises, etc., "I . . . . sheriff as aforesaid, do hereby assign, transfer and convey unto the said Thomas McGlashan all the above described real estate so stricken off and sold to him." *Held*, that the deed conveyed only the tract last described, and did not convey the other two tracts separately described. That ruling is in harmony with the statute which says that, when the State's lien for taxes is enforced, "the real estate, or so much thereof as may be necessary to satisfy such judgment, interest and costs, be sold," and since the deed says "said last above described tract was stricken off and sold," the natural and just inference is that the sheriff did not sell and did not mean to convey any but the last tract described.

6. ————: **Construction of Deed: Just Rule.** Where the deed presents a case of doubts and contradictions, and two roads are open to the court, one leading to a just conclusion and the other away from it, the one most consonant with equity will be followed.

7. ————: **Sheriff's Deed: Intendment.** The same presumption of intendment cannot be inferred in solving ambiguities in a sheriff's deed that are allowed in construing a conveyance by a private citizen.

Appeal from Shannon Circuit Court.—*Hon. W. N. Evans*, Judge.

REVERSED AND REMANDED (*with directions*).

*J. W. Chilton* and *James Orchard* for appellant.

(1) The sheriff's deed introduced by respondents as the basis of their title did not convey or purport to convey that portion of the land in controversy described as west one-half of section 9 and west one-half of section 14. Sanzenbacher v. Santhuff, 220 Mo. 274. (2) In proceedings to enforce the lien of the State for back taxes on land, it is the sheriff's duty to sell the separate and distinct tracts of land separately, in consecutive order, until the judgment is satisfied. He cannot sell separate tracts in one sale. Smith v.

Cooperage Co., 100 Mo. App. 153; Keene v. Barnes, 29 Mo. 377; State ex rel. v. Kerr, 8 Mo. App. 125. (3) It is the duty of a sheriff to sell only so much of the land embraced in a suit as is necessary to satisfy the judgment. The remainder of the lands remain the property of the owner, the judgment defendant. R. S. 1909, secs. 2206 and 11499; State ex rel. v. Elliott, 114 Mo. App. 562; Yeaman v. Lepp, 167 Mo. 61. (4) The present revenue law does not prescribe a form for deed in tax suits, nor require recitals therein as to the manner in which the land was offered for sale. R. S. 1909, secs. 11501. (5) The fact that a sheriff's deed does not on its face show the manner in which the land was offered for sale, and that it was offered in tracts separately, does not afford any presumption that it was not so offered and sold by the sheriff. Shelton v. Franklin, 224 Mo. 342; Griffin v. Franklin, 224 Mo. 667. (6) The law presumes that an officer does his duty in the absence of proof to the contrary. Shelton v. Franklin, 224 Mo. 342; Griffin v. Franklin, 224 Mo. 667; Owen v. Baker, 101 Mo. 413; State v. David, 131 Mo. 393; State ex rel. v. Crumb, 157 Mo. 556. (7) A deed will not be held to convey land which it does not purport to grant or convey. Sanzenbacher v. Santhuff, 220 Mo. 274; Hendricks v. Musgrove, 183 Mo. 300; Potter v. Long, 217 Mo. 605; Steepler v. Silberberg, 220 Mo. 258. (8) In actions to define title under section 650, R. S. 1899, to entitle plaintiff to recover judgment it is necessary only that plaintiff show a better title under the common source than defendant can show under the common source. Harrison Machine Works v. Bowers, 200 Mo. 219; Graton v. Lumber Co., 189 Mo. 322; Gage v. Cantwell, 191 Mo. 698.

LAMM, J.—Plaintiffs sue in the Shannon Circuit Court, under section 650, Revised Statutes 1899 (now section 2535, R. S. 1909, as amended), to try and determine title to three tracts of land, aggregating 960

acres, in Shannon county situate. Judgment going for defendants for all the land, plaintiffs come up.

The pleadings are conventional. Plaintiffs, claiming ownership in themselves, charge that defendants make some adverse claim of title. Defendants answer by way of admitting their own claim and denying the other allegations. For convenience let us designate the parcels of land as A, B, and C. That plan makes tract A the west one-half of section 9; B the west one-half of section 14; C the north one-half of section 17—all in township 30, range 3, in said county.

Respondents submit their case without a brief—a growing course calling for some salutary observations, we now pause to make by the by, viz.: A respondent is at liberty to stand mute here. [Bank v. Hutton, 224 Mo. 1. c. 53.] Our rules do not invite him to do so. It is not the beaten way, but (*e converso*) may be the way to be beaten. The index-finger of wisdom does not point down that way. Because such course breeds doubt and confusion. Verily respondents' silence may mean one or more of several things —witness: It may mean his judgment *nisi* is so palpably wrong that it admits of nothing of substance to be said in its defense; or that it is not worth defending and he abandons his case; or that he elects to shift the burden from his own shoulders over to the shoulders of the court in briefing his case; or that he takes his chances in the chapter of accidents and "trusts to luck;" or that his judgment *nisi* is so manifestly right that nothing worth noticing can be said against it; or that what his antagonist does say against it is a mere "mass of things . . . but nothing wherefore;" or that the court needs no aid from counsel. Finally, his silence may mean that as the judgment of a court of record is presumed to be right until the contrary clearly appears, he chooses to rest solely and only on the friendly, ample (and sometimes cold) bosom of

234 · Sup.—6

that presumption, and, so resting, goes to sleep as a tired infant on the mother's breast. Obviously, respondents should brief their side of the case as appellate rules contemplate. [Hector v. Mann, 225 Mo. 241.]

Sundry questions were raised by plaintiffs below, but their case on appeal hangs on a single thread. The common source of title is one D. F. DeWolf, deceased. Plaintiffs, DePaige and DeWolf, are his sole heirs. If their ancestor owned the land at his death, they became owners by descent cast. Presently, they sell and convey by a deed put of record an undivided one-half interest to their co-plaintiff, Chilton. If their title be good, his is. As said, their title is good by descent if D. F. DeWolf was owner when he died. Under this record, he was such owner unless title passed out of him into one Thomas McGlashan in 1899 by a tax sale and tax deed following. If the title passed to Thomas by that sale and deed, then defendants hold title under Thomas.

Attending to that phase of the case, the record shows that in 1898 tracts A, B and C became delinquent for the taxes of 1897, aggregating $23.16, distributed as follows: to A, $7.53; to B, $8.10; to C, $7.53. On suit brought and judgment got on constructive service in the Shannon Circuit Court against D. F. DeWolf for said taxes and costs—the latter taxed at $26.38—execution issued and levy, advertisement and sale followed in due course. Thomas McGlashan was the successful bidder at the sum of $220 and received a sheriff's deed. The sole question held in judgment is: Did that deed convey title? Plaintiffs concede it conveyed C, but contend it did not convey A and B. The trial court held it conveyed A and B as well as C. If plaintiffs are right in their insistence the judgment should be reversed and the case remanded. *Contra,* if the trial court is right, the judgment should be affirmed.

Our conclusion is the judgment is wrong. This, because:

The sheriff's deed by apt narrations in its reciting part refers to "tract No. 1," "tract No. 2," and "tract No. 3"—said numerals, 1, 2 and 3, referring to the same tracts as our letters A, B and C consecutively. Finally, said deed recites that on the 13th day of September, 1899, between certain hours, agreeably to advertisement, at the court house door in Shannon county and during the session of the circuit court at its September term, 1899, the sheriff did (quoting) "expose to sale at public auction, for ready money, the above described real estate, and Thomas McGlashan being the highest bidder for the following described real estate, viz.:

W½  S. 9,  T. 30,  R. 3,  W.
W½  S. 14,  T. 30,  R. 3,  W.
N½  S. 17,  T. 30,  R. 3,  W.

960 acres, for the sum of two hundred and twenty dollars, *the said last above described tract was stricken off and sold to the said Thomas McGlashan* for the sum bid therefor by him as above set forth.

"Now, therefore, in consideration of the premises and of the sum of two hundred and twenty dollars, to me the said sheriff in hand paid by the said Thomas McGlashan, the receipt whereof I do hereby acknowledge, and by virtue of the authority in me vested by law, I, J. A. Deatherage, sheriff as aforesaid, do hereby assign, transfer and convey unto the said Thomas McGlashan all the above described real estate *SO STRICKEN OFF AND SOLD TO HIM* that I might sell as sheriff as aforesaid, by virtue of the aforesaid judgment, execution and notice.

"To have and to hold the right, title interest and estate hereby conveyed unto the said Thomas McGlashan, his heirs and assigns, forever, with all the rights and appurtenances thereto belonging.

"In witness whereof," etc.

Observe, the first tract described corresponds to A, the second to B, the third to C, unless the phrase "said last above described tract," means A, B and C—i. e., the land *in solido.* The just determination of the merits of our case, therefore, hinges on the construction to be given to the quoted language of the deed. Did it convey A, B and C, or only C?

The solution of that question must be approached in the light of certain facts and certain principles of law. The maxim is: The explanation should arise from the whole subject-matter. (*Ex tota materia,* etc.) One fact is that 960 acres of land passed under the sheriff's hammer (if the trial court's theory be correct), to pay the State of Missouri its taxes amounting inclusive of costs to, say, $50—a result challenging sharp and jealous judicial attention and having no equitable feature persuasively appealing to a court of conscience. If that result is to receive judicial sanction it should come from the cold law and not one jot or tittle more or less than the cold law of the case. As pointed by counsel, the tax and costs against A, B and C were about five cents the acre. That the policy of the sovereign State of Missouri contemplates as a usual incident an act of confiscation, the sacrifice of so much for so little, is out of the question, unless such results from the exercise of a sound discretion on the part of the sheriff or some shown necessity, or by clear operation of law. Another fact is that the bid of $220, distributed over 960 acres of land, would be about twenty-three cents the acre. Now, the value of a given tract of land is not a matter this court can take judicial cognizance of. But we are allowed to know judicially, the general topography, climate and soils of this State, i. e., facts of physical geography. We are a little inclined to take judicial notice there is no tract of 960 acres of twenty-three-cents-per-acre land in Missouri. But the case does not demand we so hold. Let the point be reserved.

The foregoing facts are dwelt on as factors having some little significance in getting at the just construction of the ambiguous and bare words of the deed, by reconstructing the situation as it was at the time the deed was executed, putting ourselves in the shoes of the sheriff as near as may be and trying to get at what he meant to do and did do in the light of the whole subject-matter. In this connection it goes without saying that this is not a case in which it is contended the deed is void or voidable because of fraud or existing equities coupled with such gross inadequacy of consideration as shocks the conscience, and the bid has been commented on not for the purpose of avoiding the deed, but for the purpose, as said, of getting at what it may mean.

Pursuing that theme further, in construing this deed certain statutes and presumptions must be reckoned with. For example: To protect the landowner our statute ordains that the judgment shall decree, when the State's lien for taxes is enforced, "that the real estate, or so much thereof as may be necessary to satisfy such judgment, interest and costs, be sold." [R. S. 1909, sec. 11949.] The judgment, here, so directs and the *fi. fa.* issued thereon so commands. In the next place we have a statutory provision that when a sheriff levies an execution upon real estate, he shall divide such property, if susceptible of division, and sell so much thereof as will be sufficient to satisfy such execution, unless the execution defendant desires the sale to be made otherwise. [R. S. 1909, sec. 2206.] That we have held that statute directory, and that damage must result to the landholder before a cause of action accrues to him for violating it, is nothing to the point now in hand, which point is that, in the light of the foregoing statutes, the sheriff is presumed to follow the law and do his duty in those particulars as well as his general official duty as a just

and circumspect officer. [Shelton v. Franklin, 224 Mo. 342; Chlanda v. Transit Co., 213 Mo. 261.]

To keep well in hand our concrete case, and to limit our remarks strictly to the facts of this record, by way of exclusion, we further say the court is not now dealing with a case where a corrected sheriff's deed is relied on. A new and corrected deed may be made by a sheriff under the eye of the court when the facts warrant. However, a defective sheriff's deed cannot be corrected in equity, but when corrected in the statutory way the corrected deed relates back to the sale and, by relation, becomes effective from that time. [R. S. 1909, sec. 2239; Dixon v. Hunter, 204 Mo. l. c. 387, *et seq.*] Nor are we dealing with a case where the record shows defendants are in possession relying on a defective sheriff's deed creating color of title and invoking the Statute of Limitations. So far as appears here there is no actual possession by either party and possession may be allowed to follow the true title constructively.

Mindful of all the premises, we now come to a closer view of the case. The sheriff's deed recites that he did "expose the above described real estate to sale." Before that recital he had described three several tracts, viz., A, B and C. Therefore that recital is equivalent to stating that he exposed all the land for sale. He next says that Thomas McGlashan was the highest bidder "for the following described real estate." He next describes A, B and C, in that connection mentioning 960 acres and that Thomas's bid was $220. Undoubtedly, at this point one would expect as a natural sequence from what went before that Thomas was about to get all the land by his bid, but when what follows is eyed critically and subject to a just gloss it will be seen that the sheriff did not use words apt to show that Thomas did; for he next says the "said *last above* described tract was stricken off and sold" to him. Now, "the last above-described tract" was

C—A being the first "above-described tract," and B the second "above-described tract." Put to a guess or hypothesis, it may be the sheriff only offered tract C for sale and did not express himself clearly in leading up to that fact. At any rate, if we are put to a judicial guess at all we might as well guess that way as to guess that he did not express himself clearly when he came to the part of his narration in which he described the land he sold and conveyed. Further along in the deed the officer recurs to the matter by setting forth that he conveys to Thomas "all the above described real estate." But he does not stop with that general description, he at once modifies it by the explanatory phrase, *"so stricken off and sold to him."* That modification harks back to tract C. At this point questions spontaneously arise. For instance: If the phrasing of this deed in the particulars in hand so lacks coherence and sequence that doubts spring, as they do, shall we solve all those doubts against De Wolf, the landowner? If so, why? Shall we solve all of them in favor of Thomas, the bidder? If so, wherefore? If there had been no separate parcels of land theretofore designated in the deed as "tract 1," "tract 2" and "tract 3," and the sheriff had for the very first time employed the word "tract" in the phrase, "the last above described tract was stricken off and sold to the said Thomas McGlashan," then there might be a mere bit of color in reason justifying the notion that by using the word "tract" in that phrase he meant *all* the land he had just described. But does not the preceding use of the word in the deed, each time in the sense of subdivisions A, B and C, indicate that he finally used it in the quoted phrase in the same sense in which he had been using it before? In that view of the case, we do not feel at liberty to arbitrarily say he faced about and changed the sense and scope of the word "tract." Being driven to some little refinement to construe the deed, we do not say that

DePaige v. Douglas.

if the price and acreage somewhat fit each other, or if the amount bid pointed unfalteringly to the conveyance of 960 acres, that fact would conclude us.  But questions arise, viz.:  Does not the lack of correspondence between price and total acreage point a little to the sale of only *one* tract?  Withal, shall we assume that the sheriff violated his duty to divide the land, and not sell it *in solido,* except at the desire of the execution defendants?  In fine, if the language of this deed be looked to from the viewpoint of what the sheriff should have done (as indicated by the facts and statutes) or from the viewpoint of what the sheriff actually did do (as indicated by the words of the deed), we would not be justified in saying from either that this deed conveyed tracts A, B and C.

There is a rule in construing deeds that words written in are allowed more control than printed words in cases of doubt or repugnancy. [Williamson v. Brown, 195 Mo. l. c. 336.]  But this record does not show what parts of the deed were in print and what in writing, hence we can borrow no aid from that rule of law.

The deed we are construing presents a clear case of contradictions and doubts.  Now, in law the rule in case of doubts and contradictions is not the one laid down by one Hoyle.  I am told (speaking with modest caution) that author formulates this rule:  When in doubt, take the trick.  Said Hoyle clearly was not a law-writer.  His chosen theme is not one the Supreme Court of Missouri is presumed to know anything about. In law the rule is:  In case of doubt, conscience has play.  If two roads are open because of doubts, contradictions or ambiguities, one leading to a just goal and the other away from it, the duty of a court is to take the first and not the last.  I confess to a rooted admiration and fondness for Sir Edward Coke as a jurist.  From his strong pen fell naturally the most profound precepts and axioms of the law.  Old Thomas

Fuller justly and finely says of his works that they
"will be admired by a judicious Posterity while Fame
has a Trumpet left her or any Breath to blow therein."
Sir Edward said (2 Coke's Inst., 173): "When am-
biguities or faults of expression render the meaning of
the law doubtful, that interpretation should be pre-
ferred which is most consonant to equity, especially
where it is in conformity with the general design of the
Legislature." That rule is the Latin maxim, *In am-
bigua voce legis ea potius,* etc. If we read into that
maxim the word "deed" for the word "law," we have
a very good rule for construing the deed in question.
In solving ambiguities in sheriff's deeds a different
rule is applied than in direct conveyance by a grantor.
The same presumption of intendment cannot be in-
ferred in the former as in the latter. [Nelson v. Brod-
hack, 44 Mo. l. c. 603.]

Furthermore, it is settled law that general words
of description may be modified and restricted by par-
ticular words following them. [Guffey v. O'Rieley,
88 Mo. l. c. 423.]

Quickened by the foregoing facts, precepts and
conclusions, we hold the sheriff's deed conveyed only
the 320 acres, designated C. That ruling leaves A and
B the property of plaintiffs. Counsel cite a precedent
on all-fours. [Sanzenbacher v. Santhuff, 220 Mo. 274.]
The facts of that case are scantily reported. We were
driven to consult the original record. Going there, we
find the tax deed in judgment had the identical ambi-
guity here. There were two tracts apparently offered
for sale and apparently bid off. But when the officer
reached the point of *conveying,* he only conveyed the
last tract. He conveyed precisely as the sheriff in our
case, viz., by saying, "the said last above described
tract was stricken off and sold to said W. S. Worley
for the sum bid therefor by him as above set forth."
Further along the deed recites, as does ours, that the
sheriff conveyed "all the above described real estate

so stricken off." On such record we held in that case that the title to the last tract alone passed. It was further held that the title to the other tract remained in the landowner subject to paying its proportion of the tax judgment. We conclude such holding was grounded on the fact that the sale did not pay the taxes. In the instant case the sale paid all taxes fourfold.

The premises all considered, the judgment should be reversed and the cause remanded with directions to enter judgment in favor of defendants for the north one-half of section 17, township 30, range 3, (C), and for plaintiff for A and B, viz., the west one-half of section 9, and the west one-half of section 14—same township and range—the costs of appeal to be taxed against defendants and those of the principal case to run against both parties, half and half. It is so ordered. All concur, except *Valliant, J.,* absent.