D. J. GILBERT, RESPONDENT, v. C. C. MALAN, DEFENDANT, AND CENTRAL MUTUAL INSURANCE COMPANY, GARNISHEE, APPELLANT.—100 S. W. (2d) 606.

Kansas City Court of Appeals. January 11, 1937.

470

*A. Lamkin James* for respondent.

*Fred F. Wesner* and *Horace F. Blackwell* for appellant.

REYNOLDS, J.—This is a proceeding in garnishment, arising in the Circuit Court of Saline County, which was regularly transferred to the Circuit Court of Lafayette County on a change of venue and finally heard and disposed of in that court.

It appears from the record that the defendant, C. C. Malan, during the month of September, 1933, was the owner of a certain Chevrolet truck, 1932 model, motor number 3353447, which he operated out of the town of Miami, Saline County, Missouri, where he lived; that the garnishee, the Central Mutual Insurance Company of Chicago (hereinafter referred to as the appellant), is a corporation duly organized and engaged in the insurance business and in issuing policies of insurance covering liability of the insureds named therein incurred in the operation of their motor cars on account of property damage to the property of others and bodily injury to the persons of others; that, on September 7, 1933, it issued its policy of insurance numbered A 34007 to defendant Malan in consideration of a premium paid or to be paid thereon, insuring the said defendant against liability for personal injuries sustained by others not in excess of $5000 for any one person injured and not in excess of $10,000 for all persons injured in any one accident and also against liability for damages to the property of others not exceeding $5000, while operating his said six cylinder Chevrolet truck, for one year from the date of issue; that, on March 26, 1934,

plaintiff was the owner of a 1933 model, De Luxe Plymouth sedan, which he was operating on a public highway in Pettis County, Missouri; that, while he was so operating his said sedan on such highway and was riding therein, the defendant, Malan, was at the same time operating his said truck described in said policy of insurance so issued to him on the same highway with plaintiff and so operated the same as to cause it to run into and collide with plaintiff's said sedan, by reason whereof plaintiff received severe personal injuries and his sedan was broken and damaged; that, for the personal injuries and the damages to his sedan so occasioned him, he filed suit against defendant Malan in the Circuit Court of Saline County, Missouri, returnable to the September term, 1934, of said court; that defendant Malan filed an answer in said suit and, upon a trial had in said court of the issues raised in such suit, plaintiff on January 17, 1935, recovered judgment against defendant Malan in the sum of $2000 for his personal injuries and $200 for the damage to his sedan, which judgment thereafter in due time became final; and that no part of said judgment has been paid to plaintiff but the same remains in force and effect for the full amount thereof.

Due notice of the suit appears to have been given by defendant Malan to the appellant; and, at the same time, a request was made by defendant Malan of appellant to defend the suit; and a copy of the summons, together with a copy of the petition in said suit, was delivered to it by defendant Malan. Appellant responded to the notice thus given it and the request thus made of it by writing that the policy of insurance issued by it to him covering his truck in question had been cancelled on November 7, 1933, and was not in force at the time of the accident involving plaintiff in said cause and declined to defend the suit, further stating that notice that said policy of insurance would be cancelled on said date was forwarded by it to the defendant on November 2, 1933.

An execution was caused to be issued upon said judgment; and appellant was summoned thereunder as garnishee and required to answer interrogatories filed and exhibited to it as such garnishee by plaintiff in the Circuit Court of Saline County touching, among other things, the existence of the policy of insurance in question, its issuance and delivery to defendant Malan, its terms and conditions, and the indebtedness of appellant thereunder to defendant Malan.

In its answer to such interrogatories, appellant as garnishee denied that, at the time that it was summoned as garnishee or since such time or at the time of making such answer, it had in its possession, custody, or charge any goods, chattels, money, claims, or effects of defendant Malan; that, at any of such times, it was indebted to him or owed him any money; that it was bound in any contract or otherwise to pay defendant Malan any money not at such times due or

472

afterward to become due; and that, on or about March 26, 1934, there was any insurance policy in force issued by it to defendant Malan or any contract or instrument in writing in force at such times whereby it agreed to reemburse defendant Malan on account of any judgment for damages for which he might be liable or on account of any property damage or personal injury arising out of the operation by him (the said Malan) of any truck or motor vehicle whatever.

Thereafter, in due time, plaintiff filed his denial to the answer of appellant as garnishee to the interrogatories exhibited, in which he set up the facts hereinbefore mentioned that, on or about March 26, 1934, he was the owner of a 1933 model De Luxe Plymouth sedan; that, on said date, while he was operating said sedan on the public highway in Pettis County, he was run into by defendant Malan with a six cylinder model Chevrolet truck, motor number 3353447, at the time being operated and owned by such defendant upon such highway and, by reason thereof, sustained personal injuries to himself and property damage to his said sedan, for which he thereafter filed suit for damages against defendant Malan in the Circuit Court of Saline County, Missouri, returnable to the September term, 1934, of said court; that defendant Malan filed answer to said petition; that, upon the trial of the issues thereby raised, had on January 17, 1935, at the January term, 1935, of the court, he recovered a judgment against defendant Malan in the sum of $2000 for his personal injuries and $200 for the property damage to his car; that no part of said judgment has been paid him; and that an execution had been issued thereon.

Plaintiff further set up in his denial the issuance and delivery of the policy of insurance in question, Number A 34007, by appellant on September 7, 1933, to defendant Malan upon his application to it therefor in consideration of premiums paid or to be paid it, insuring him for the period of one year from the date of its issuance against liability for personal injuries in an amount not exceeding $5000 for any person and not exceeding $10,000 for any number of persons in any one accident and also against liability for property damage not exceeding $5000 incurred while operating his six cylinder 1932 model Chevrolet truck, motor number 3353447.

Plaintiff in his said denial further set up that by the terms and provisions of said policy, appellant insured defendant against liability from loss by reason of damage to the property of others and personal injury to others in amounts not exceeding the amounts therein before stated; that said policy of insurance was in full force on March 26, 1934, and that, by reason of the premises, appellant became and is liable for the payment of the judgment obtained by plaintiff in the Circuit Court of Saline County, Missouri, as foresaid, against defendant Malan and denied that said appellant's answer to said interrogatories propounded to it was true and that, by reason of the premises

and said policy of insurance, appellant became indebted to defendant Malan for the amount of said judgment in the sum of $2200, together with the costs of suit of plaintiff against defendant Malan, and prayed that the court require appellant to pay into court the sum of $2200, together with the costs, in behalf of defendant Malan and for the benefit of plaintiff.

Thereafter, in due time, the garnishee, appellant, filed in the Circuit Court of Lafayette County, where said cause had been transferred on change of venue, its reply to plaintiff's denial to its answer, in which it denied generally each and all of the allegations set forth in plaintiff's denial of its answer and denied all of the allegations in plaintiff's said denial and denied that it ever had any business relationship with defendant Malan, as a corporation, directly or by or through any authorized agent, in September, 1933, or at any other time mentioned in plaintiff's denial of appellant's answer.

In further reply to plaintiff's denial of its answer, appellant as garnishee alleged that it did issue its said insurance policy No. A 34007, in which defendant Malan was the named insured, in consideration of the payment of the premium therefor, upon the delivery thereof, in the sum of $84 in cash, and delivered said policy to one W. A. Taylor, upon the request of the said Taylor who represented himself as the agent of defendant Malan; that neither the said Malan nor the said W. A. Taylor paid the premium thereon or any part thereof; that, on account of the nonpayment of said premium it did, on November 2, 1933, cancel said policy as of the date of its issuance, to-wit, September 7, 1933; that, on said date of November 2, 1933, it gave to defendant Malan five days written notice of said cancellation by letter deposited in the United States mail addressed to him at Miami, Missouri, and prepaid the postage thereon; and that it so cancelled and gave notice of said cancellation of said policy by virtue of a clause contained in said policy which, among other things, provided as follows:

". . . This policy may be cancelled at any time by this Company by giving to the Assured five (5) days' written notice of cancellation with or without tender of the excess of paid premium above the *pro-rata* premium for the expired term, which excess, if not tendered, shall be refunded on demand and surrender of Policy. The Company shall not be liable under this policy during any period in which the assured may be in default for the payment of any part of the premium hereunder. Notice of cancellation mailed to the address of the Assured stated in the policy shall be a sufficient notice."

By its said reply, appellant further set up that said policy was, by reason of the nonpayment of premiums thereon, null and void on March 26, 1934, at the time of plaintiff's injury by reason of defendant Malan's running into and colliding with him and his sedan

with his truck described in said policy and asked that it be discharged with its costs.

Upon the trial, plaintiff offered in evidence a certified copy of the judgment in the Circuit Court of Saline County, Missouri, in his favor against defendant Malan for the sum of $2200, which judgment also directed that execution should issue thereon, and also offered in evidence the policy of insurance issued by appellant involved herein, together with a copy of Malan's application to appellant for said policy upon which appeared printed the name of H. Reiss as agent.

Defendant Malan testified for plaintiff that, during the month of September, 1933, a man giving the name of Reiss called and solicited him to take out insurance with appellant; that, at such time, Reiss had with him application blanks addressed to appellant upon which his name appeared as agent; that, after several visits by Reiss to his (Malan's) home in Miami, Missouri, he concluded to take the insur- ance and signed an application to appellant upon one of the blank forms of said company submitted to him by Reiss, upon which Reiss' name appeared printed as agent, and delivered the same to Reiss; that he at that time paid Reiss the sum of $36 as part premium thereon and agreed to pay the balance of such premium, amounting to $91.50, at the rate of $30.50 per month.

Shortly thereafter, he received a letter from the Interstate Automobile Club of Chicago, Illinois (hereinafter referred to as the club), signed "Interstate Automobile Club Per W. A. Taylor" and enclosing the insurance policy applied for by him and numbered A 34007, issued to him by appellant and signed by one H. C. Bates as authorized agent and countersigned by the said W. A. Taylor at Chicago, Illinois, September 8, 1933. Such letter advised him that the balance of the premium .due on the policy issued to him was to be paid in three monthly installments and that he would be billed therefor in advance of the due date of each installment. This letter head gave the same street address and the same telephone number for the club as that appearing on the application blank which defendant Malan had signed in making application to appellant for the policy.

Defendant Malan testified that, shortly after the receipt of the policy and of the letter last above mentioned from the club, he received a letter from appellant directing the payment of all premiums on said policy to the club and directing that all communications thereafter had concerning such policy be had with said club.

It does not appear from the record that defendant Malan had ever had any business dealings with W. A. Taylor prior to the receipt of the policy through him; that he had ever at any time employed or authorized him as his agent to secure the policy in question or any other policy of insurance for him or in his behalf. Upon the other hand, it clearly appears to the contrary. Neither does it appear that

he had ever had any business relations with the club or made application for the policy of insurance in question or other policy to or through it, but to the contrary. Nor does it appear that he had employed H. Reiss, who solicited and took his application to appellant for the insurance in question, as his agent, but to the contrary.

In accordance with the instructions received from appellant to pay the premiums on the policy in question to the club, defendant Malan thereafter mailed to the club his check dated October 2, 1933, payable to said club for $30.50 (the first installment due on account of said premium on the policy) and again, on November 3 forwarded to said club his check in the sum of $30.50 (the second installment due on said premium) and thereafter, on November 29, 1933, forwarded to said club his check for the final installment due on said premium in the sum of $30.50. Each of said checks was paid, and each of the same was introduced in evidence by the plaintiff, and each bears on the back thereof the endorsement of the club by W. A. Taylor.

On the next day after the collision of his truck with the plaintiff and his sedan, defendant Malan wrote direct to appellant giving notice to it of such collision with plaintiff and of the damages to him and his car.

From the record, it appears that W. A. Taylor (through whom the policy in question was delivered to defendant Malan) was, in September, 1933, engaged in the automobile insurance business (that is, in soliciting and taking applications for policies of insurance which he placed with insurance companies, upon which applications policies of insurance were issued if accepted by such companies); that, among the companies with which he placed such business in September, 1933, was appellant; that he had been so engaged with appellant for about two years, at times placing with appellant $1000 or $1500 per month in premiums; that he termed himself an insurance broker; that, in September, 1933, at the time that the policy in question was issued, he had an office in a building at 11 S. La Salle Street in the city of Chicago and conducted his business therein under the name of W. A. Taylor & Associates and also under the name of the Interstate Automobile Club; and that, to all intents and purposes, he was the club. He testified that he never at any time represented defendant Malan but recalled having received an order from an insurance salesman for insurance covering Malan's trucks; that he handled his business with appellant by placing an order with it for insurance to be executed in the form of a policy; that he procured the Malan policy to be issued by appellant upon an application made to it by Malan upon a blank application form got up by appellant and delivered to Reiss by Malan; that, in September, 1933, at the time that the policy was issued to Malan, Taylor's office and that of the club was immediately across the hall from the office of appellant, and they had the same telephone

number as appellant, and Taylor procured business to be placed with appellant, with which appellant company he had a special arrangement for a discount of about twenty percent from the regular or manual rate of premiums charged for all business procured and placed with it; that he had a charge account with appellant for the premiums on the policies so procured and placed with it by him and collected said premiums, and credit was extended to him by appellant for all such so collected by him, and he was allowed his discount by way of commissions thereon; that sometimes premiums were paid by the insured to appellant, in which event appellant accounted to him for his commissions thereon; and that the Malan policy was issued and delivered to him on his credit. He testified that, to the best of his knowledge and belief, he was never notified by appellant of any cancellation of the policy in question but that it was customary for a company, upon cancellation of a policy which had been procured through him, to send him a copy of the original notice sent to the policyholder and that appellant was more liberal with him in commissions allowed and discounts granted than other companies were and, for such reason, he did a greater business with it than with others.

It does not appear that defendant Malan ever knew of W. A. Taylor until he received the policy in question through him. It appears that he made his application direct to appellant through Reiss, who solicited his application therefor; that Reiss' name appeared as agent on the blank application form upon which defendant Malan's application was made; that Malan did not look Reiss up and seek to have him procure the policy in question or other insurance for him; that he treated with Reiss merely as an agent of the appellant; that he did not know that Reiss was working with or through Taylor or the club and made his application direct to appellant; that he never appointed Taylor or the club as his agent and never authorized Taylor or the Club to procure any insurance for him; that he never knew that either had anything to do with the procurement of said policy until the same was delivered to him by Taylor and until he was directed by appellant by letter to make all checks in payment of the premiums thereon payable to the club and to have all correspondence concerning said policy thereafter with the Club. Upon receipt of said letter, upon investigation made, he found that Taylor was operating an insurance business both under the name of W. A. Taylor & Associates and under the name of the club, just across the hall from appellant's offices in the same building, at 11 S. La Salle Street, Chicago; that an extension of appellant's telephone was in Taylor's offices; and that Taylor's telephone and that of the club carried the same number with that of appellant. He, thereafter, made payment of premiums to the Club as directed by appellant and had, long prior

to his accident of March 26, 1934, paid all premiums due on said policy of insurance.

Defendant Malan testified that he never, at any time, received from appellant or any person or corporation any notice that his policy of insurance covering his truck had been cancelled by appellant on account of nonpayment of premium or for any other reason.

Defendant Malan further testified that, upon the collision of his truck with the plaintiff and his car, he gave notice by letter of such collision and of the plaintiff's injuries and car damage to appellant and received from the club a letter in which it was stated that his letters to appellant had been turned over to it and asked that Malan address all further communications with reference to such matter direct to the Club. In said letter, it also enclosed an accident report blank which it asked Malan to fill out and return to it. This was done, but no response was made thereto as far as is shown by the record and no answer was ever received by Malan direct from appellant to his letter to it giving notice to it of his accident.

There was evidence on the part of appellant to the effect that no part of the premium on said policy had been paid to it by Taylor or the Club or other person or party; that, on November 7, 1933, it had cancelled said policy for the reason of nonpayment of premium and had, on November 2, 1933, given notice to defendant Malan by an un-registered letter addressed to him at Miami, Missouri, deposited in the United States mail at Chicago, Illinois, that said policy would be cancelled on November 7, 1933; that it was after such cancellation that it received notice of the suit by plaintiff against Malan in the Circuit Court of Saline County, Missouri; and that, on September 22, 1934, it advised Malan's attorney in reply to a notice enclosed by him of such suit that the policy covering defendant's truck had theretofore been cancelled for nonpayment of premium. There was further evidence on the part of appellant to the effect that not W. A. Taylor or the Club or Reiss was its agent for the purpose of soliciting and procuring policies or making insurance contracts for it in September, 1933, or at any other time. There was evidence, however, that it issued the policy in question upon the application to it of defendant Malan, procured by Reiss and placed with it by Taylor.

The cause being submitted to the court, the court found the issues for the plaintiff and rendered judgment for the plaintiff against the appellant in the sum of $2512.54, together with costs, and ordered that execution issue therefor, from which judgment the appellant prosecutes this appeal.

## OPINION.

1. The appellant presents seven assignments of error. The first two allege error on the part of the trial court to the effect that its findings

and judgment are against the evidence and the weight of the evidence. Assignment No. 3 alleges error on the part of the trial court to the effect that its findings and judgment are against the law under the evidence, while assignment No. 4 alleges error on the part of the trial court to the effect that its findings and judgment are for the wrong party.

All of such assignments are mere general, abstract propositions, presenting in a concrete way no specific matters for our consideration. Each of the same is indefinite and, standing alone, is insufficient to present any matter for review by us. [Matthews v. Karnes (Mo.), 9 S. W. (2d) 628; Bond v. Williams, 279 Mo. 215, 214 S. W. 202.]

Not only is this so, but each of such assignments invites a review by this court of the weight of the evidence which, it has always been held, we will not do upon an appeal. All questions relating to the weight of the evidence are for the trial court and for it alone. [Buehler v. Baum (Mo. App.), 71 S. W. (2d) 851.]

The fifth, sixth, and seventh assignments appear to be carried forward in appellant's brief under points 1, 2, and 3 under the heading "Points and Authorities" and in the argument. We proceed to the consideration of all assignments of error properly made and carried forward by appellant and to the points made by it in its brief.

2. The first point made by it is based upon the fifth assignment of error made by it and is as follows: "The evidence showed that one W. A. Taylor made the application for the insurance policy involved herein and that, in so doing, he was the agent for the assured and not for the insurance company."

It is contended that Taylor was merely an insurance broker engaged in procuring applications for insurance and placing them with appellant and procuring the issuance and delivery of policies of insurance thereon and that, in so doing, he was not the agent of appellant but was the agent of the applicant for the insurance.

It is true that an insurance broker, unless otherwise authorized and provided, represents the insured and, unless otherwise shown by the evidence, is to be regarded as the agent of the insured. [Luthy v. Northwestern National Insurance Company of Milwaukee, Wis., 224 Mo. App. 371, 20 S. W. (2d) 299.]

However, such a broker may enlarge his relationship with the company for which he procures business so as to become the agent of such company in one or more or all the particular matters involved in connection with the procurement and making of an application, the issuance and delivery of a policy thereon, and the collection of the premiums on such policy. [Luthy v. Northwestern National Insurance Company of Milwaukee, Wis., *supra*; Pringle v. Aetna Life Insurance Company, 123 Mo. App. 710, 101 S. W. 130.]

Whether he has so enlarged his relationship as to become the agent

of the company in such particular matters or one or more of them and not the agent of the insured is a matter of fact to be determined from the evidence in each particular case. [Luthy v. Northwestern National Insurance Company of Milwaukee, Wis., *supra*; Pringle v. Aetna Life Insurance Company, *supra*.]

He is not necessarily the agent of either of the parties throughout. He may be the agent of one of them in the transaction of some of the particular matters involved and of the other in the remainder of the matters involved. Thus, he may be the agent of the insured in taking and placing the application and of the company in the issuance and delivery of the policy and the collection of the premiums thereon.

Thus, in the case of Luthy v. Northwestern National Life Insurance Company of Milwaukee, Wis., *supra*, by this court, the opinion in which was written by Judge BLAND, it is said at page 300 of 20 S. W. (2d):

"Unless otherwise provided, an insurance broker represents the insured, although he may represent either the insured or the insurer, or both, for certain purposes. It is a question of fact to be determined by the evidence. He may be the agent of the insurer for the purpose of delivering the policy and collecting the premiums, for the collection of the premiums only, or not even for that purpose."

And again, in the case of Pringle v. Aetna Life Insurance Company, *supra*, by this court, the opinion in which was written by Judge ELLISON, it is said at page 714 of 123 Mo. App.:

". . . It is a general statement of law that a broker is the agent of the assured and not of the insurer. If he is the agent of the insurer it is because of some special condition or circumstance in the particular case. 'A mere insurance broker cannot be converted into an agent of the insurance company, without evidence of some action on the part of the company, or of facts, from which a general authority to represent it might be fairly inferred.' [123 N. Y. 6, 16.] A broker, after fulfilling the object of his service, viz., obtaining a valid contract of insurance is no longer the agent of either party. While he may perform acts which will bind the company in consummating the contract, his agency is not a continuing one. He is not an agent for future acts. . . .

"But there is no reason why one who has acted as broker may not have his ordinary relations to the company from which he procures the insurance enlarged."

4. If it should be, as contended by appellant, that Taylor was the agent of defendant Malan in making and placing Malan's application for the insurance and in procuring the policy to be issued (which we have no doubt, under the record, that he was not), it would not necessarily follow that he was the agent of defendant Malan for the delivery of the policy in question to him and for the collection of the

premiums thereon. Whether he was or not would depend on the evidence. The procurement of the application and the placing of it with the appellant is one matter, and the issuance and delivery of the policy thereon by appellant and the collection of the premiums on said policy is another. Taylor could have been the agent of Malan in placing the application and in such particular alone and the agent of appellant in making delivery of the policy and collecting the premiums thereon.

The evidence, in our opinion, wholly fails to show that the Club, Taylor, or Reiss, who procured the application for the policy from Malan, was the agent of Malan in such matter or that the Club, Taylor, or Reiss was the agent of Malan for the delivery of the policy to him or the collection and payment of premiums thereon. But, upon the other hand, there is evidence clearly showing that they were the agents of appellant in all of such matters. The application was given upon the solicitation of Reiss, who called on Malan armed with a blank form addressed to appellant, in use by appellant, with the name of Reiss printed thereon as agent; and, as agent for appellant, he solicited Malan to execute such application and took it away with him. Malan had never seen or heard of him before. He had never had any business transactions with him or through him. Reiss represented to Malan that he was the agent of appellant and, in addition to such blank application, had in his possession certain forms of policies issued by appellant.

Malan dealt with Reiss alone as an agent of the appellant. He did not know that Reiss had any connection with Taylor or with Taylor and the Club. Neither had he ever heard of Taylor or the Club or had any business transactions with Taylor or the Club; nor had he authorized Taylor or the Club to represent him in any matter or in the placing of his application and the procurement of the policy in question. He did not know that Taylor was a broker or that he, as such broker or as manager of the Club, was engaged in placing applications for insurance with appellant. The first knowledge he had of Taylor or of the Club was when he received a letter from the Club by Taylor as manager enclosing the policy issued by appellant to him upon his application. From this letter, he noticed that the address of Taylor and the Club was the same street number as that given as the address of appellant on the copy of his application and that the two had the same telephone number. Naturally, he supposed that there was some connection between Taylor and the Club and appellant with reference to the delivery of said policy, which supposition was later confirmed, within a short while, by appellant's letter to him, directing him to pay all premiums on the policy to Taylor and the Club. That Reiss had the connection claimed by him with appellant as its agent in the matter of obtaining his application for the insurance was also

made to appear from the fact that appellant issued its policy upon such application and that such policy had been forwarded and delivered to him.

5. It is manifest from the record that Taylor received the application for the policy from Reiss, either for himself personally or for the Club; that he placed said application, either for himself personally or for the club, with appellant; that appellant accepted such application and issued its policy to defendant Malan thereon.

When a witness upon the trial, Taylor, on being questioned by counsel for plaintiff concerning his authority, if any, to act as agent for Malan in securing the policy in question, in substance said that Malan had never authorized him to transact any business for him; that he recalled having received an order from a salesman who was working for a St. Louis automobile club for insurance for Malan. Upon direct inquiry as to who Reiss was, if he knew, he answered, "That is the fellow whom I have just referred to, his people live here in town—as an automobile salesman, but, as I say, he was working in the St. Louis territory and doing most of his business with the St. Louis Automobile Club." When asked whether Reiss was acting for him in soliciting business, he answered, "—No." When asked whether Reiss corresponded with him concerning insurance prospects, he replied, "There wasn't much correspondence of such nature." When asked if there was any correspondence, he answered, "Yes," and added not with himself personally but with the club. When asked who the club was, he replied, "Well, I am the Interstate Automobile Club to all intents and purposes," and added that he was president of the club and that it was dying a natural death and that, when some two year contracts which it had out were up, it would be through. There was evidence tending to show that Taylor not only operated his insurance business under the name of W. A. Taylor & Associates but managed and conducted the business of the club as its president from the same office. While a witness, he identified the policy introduced in evidence by the plaintiff as one issued by the insurance company at his request. Later, while a witness, he was asked by plaintiff's attorney whether H. Reiss had been his agent in procuring applications for insurance and replied, "I would not say that Reiss was ever my agent, unless technically, because I heard from the man but a very few times, and why he elected to put this business with us rather than with a St. Louis concern is more than I know." In face of this evidence, there can be no question but that the application of Malan in question was placed with Taylor by Reiss and no question but that neither Reiss nor Taylor or the club was the agent of defendant Malan in the matter of making and placing his application for the policy in question.

6. But, if it be considered that either of them was the agent of

Malan in such matters and not the agent of appellant, the evidence is clear that the appellant constituted Taylor personally or the club of which he was the manager as its agent in delivering the policy to Malan when issued and in collecting the premiums thereon. Upon issuing the policy, it delivered the same to Taylor, either personally or as manager of the club, for delivery through the mail to Malan at a distant point; and Taylor, either personally or as manager of the club, delivered the same through the mail to defendant Malan; and Taylor, personally or as manager of the club, at the time and afterward was authorized by appellant to collect the premiums thereon and did collect the premiums thereon as agent of appellant. The record entirely fails to show that defendant Malan ever directed the delivery by appellant of the policy in question, when issued, to Taylor or the club for him or directed its delivery to him by either Taylor or the club through the mail or otherwise or that he ever directed that Taylor or the club collect the premiums thereon or ever asked to be permitted to pay such premiums through Taylor or the club. The appellant constituted Taylor or the club its agent in such particulars without any direction or request from defendant Malan to do so. True, Malan did pay the premiums on the policy, after it was delivered, to the club; but he did so under directions from appellant.

It is held by the authorities without dissent that, where an insurance broker is entrusted by the company with the delivery of a policy and the collection of the premiums thereon without any directions so to do by the insured, he is to be regarded as the agent of the company for such purpose. [Farber v. American Automobile Insurance Company, 191 Mo. App. 307, 177 S. W. 675, and authorities therein cited.]

A mere insurance broker, as such, is without authority to receive a premium from an applicant for insurance. His authority is at an end when he has obtained a valid contract of insurance; and he is no longer the agent of either party for any purpose, unless and until he is constituted such agent for such purpose by such party. [Pringle v. Aetna Life Insurance Company, *supra.*]

The appellant issued the policy in question upon the application of defendant Malan placed with it by Taylor, either for himself personally or as manager of the club. Such application was on a printed form in use by appellant, and Reiss' name appeared printed thereon as agent. It knowingly accepted such application and issued its policy thereon. It is immaterial that it received such application through Taylor. It is immaterial through whom it may have received the same, whether through an agent of defendant Malan or from some other source. It knowingly issued its policy thereon and delivered it to Taylor, personally or as manager, for delivery to defendant Malan,

without directions from Malan for such delivery; and, in pursuance of such authority, Taylor delivered it to Malan; and, in pursuance of authority from appellant, either personally or as manager, he collected the premiums thereon. It is bound by its contract, embodied in said policy. Appellant's point and all the implications arising therefrom are held not to be well made under the evidence in the record.

7. Appellant contends that it had cancelled the policy in question long prior to the collision in question and the consequent injury to plaintiff and damages to his sedan, on account of nonpayment of premiums thereon, and had given Malan notice of such cancellation under a clause in the policy giving it the right to cancel the same at any time with or without refunding any excess premium on such policy, upon five days notice mailed to the address of the insured, Malan, at Miami, Missouri, which clause further provided that such notice should be sufficient.

Defendant Malan denied, however, that he ever received any such notice. His denial was evidence tending to show that the letter was not mailed to him as claimed and made a question of fact as to whether the letter was in fact mailed to him, to be determined by the trier of the fact. His denial of the receipt of such notice raised an issue as to whether the same had ever been deposited in the mail addressed to him at Miami, Missouri.

It is presumed that a letter properly addressed with postage prepaid, deposited in the United States mail, reaches its addressee. But such presumption is not conclusive in the face of evidence tending to show the contrary. It is a rebuttable presumption and may be overcome by evidence which tends to show that such letter was not in fact deposited in the mail. The trial court was clearly within the law when it found that such notice had not been deposited in the mail as claimed by appellant. [Hawes v. American Central Insurance Company of St. Louis (Mo. App.), 7 S. W. (2d) 479; Fleming v. Anderson (Mo.), 232 S. W. 718.]

8. Appellant contends for its second point that it is not shown that the garnishment proceedings are based on or are under any execution on plaintiff's judgment against the defendant, Malan; that the evidence fails to show that any execution was issued; and that an execution is necessary upon which to base a proceeding in garnishment or the issuance of a summons to appellant as garnishee or upon which to base the service of such summons.

That an execution shall necessarily issue preliminary to any service of garnishment or other proceeding to be had in garnishment fairly appears from the provisions of the statute. [Sections 1396 and 1397, Revised Statutes 1929.]

However, that an execution was not issued on such judgment does

not appear from the record in this cause. The defense that it was not issued appears to have been overlooked in the proceedings and upon the trial below. It appears to have been first raised here. No mention is made of it in appellant's answer or in its reply to the denial of its answer by the plaintiff or in its motion for a new trial or in its motion in arrest.

Moreover, it is presumed, in the absence of any evidence tending to show that it was not issued, that it was issued and that appellant was summoned as garnishee thereunder and that all of the proceedings in the garnishment were had thereunder.

The judgment directed that execution issue. That the clerk of the court did his duty and issued execution as directed and that it was delivered to the sheriff and that the sheriff had the same and was acting thereunder at the time he summoned appellant as garnishee are presumed in the absence of evidence to the contrary. The law indulges the presumption that the acts of public officers are regular and that they do their duty until it is otherwise shown. [22 C. J. 135, 136; State ex rel., Shannon Co. v. Hawkins, 169 Mo. 615, 70 S. W. 119; State ex rel., School District No. 1 v. Andrae, 216 Mo. 617, 116 S. W. 561; Chlanda v. St. Louis Transit Co., 213 Mo. 244, 112 S. W. 249; De Paige v. Douglas, 234 Mo. 78, 136 S. W. 345; Smith v. Vickery, 235 Mo. 413, 138 S. W. 502.]

Likewise, the presumption is indulged in favor of the regularity of all judicial proceedings until the contrary is shown. [22 C. J., pp. 128, 129, 130; Baze v. Island City Mfg. Co., 94 S. W. 460.]

9. The appellant for its third and final point contends that the trial court erred in rendering final judgment against it without having first made an interlocutory order upon appellant to pay the amount found to be due by it to defendant Malan to the sheriff or into court under the policy in question and thus having given it an opportunity to discharge itself from all further liability to defendant Malan as provided by Sections 1402, 1403, and 1415, Revised Statutes 1929, and that, for such reason, the judgment is void, citing Panagos et al., v. General Cigar Co. (Mo. App.), 268 S. W. 643; Roberts v. Meek (Mo. App.), 45 S. W. (2d) 537, in support of such contention.

Such final judgment was irregular and unauthorized and was prematurely entered. It was entered without the interlocutory order required by statute directing appellant to pay the amount found due defendant Malan under the policy to the sheriff or into court having been made and without an opportunity having been given appellant to discharge itself from further liability to defendant Malan on account of such sum. As said by this court in Panagos et al., v. General Cigar Company, *supra,* the decisions of this State are all one way on this question. If anything further is needed, it is supplied by the admission of plaintiff in his brief that such contention is well made and that the judgment in this case was prematurely entered.

Plaintiff insists, however, that all of the rest of the proceedings in this cause are regular and that the judgment should be reversed insofar only as to permit the trial court to make its interlocutory orders giving appellant the oportunity to pay the amount found due to the sheriff or into court within a time fixed and to discharge itself from further liability to defendant Malan before giving judgment awarding execution and that the cause should be remanded for the purpose only of making such orders and giving such opportunity, with directions to the trial court to make such orders and give such opportunity.

A very similar if not an identical situation seems to have arisen in the case of Walkeen Lewis Millinery Co. v. Johnson, 130 Mo. App. 325, 109 S. W. 847, in the St. Louis Court of Appeals. The court there (109 S. W. 847, l. c. 850) said:

". . . The finding, in so far as the indebtedness of the garnishee bank to the defendant in attachment is concerned, is entirely regular. It is therefore unnecessary to retry that issue in the court below. The action of the circuit court was irregular and unauthorized only in so far as it gave judgment and awarded execution prematurely against the garnishee. Substantial justice requires that it be reversed thus far only.

To the end, therefore, that the court may make proper orders on the garnishee to pay the fund to the sheriff or into court before giving judgment and awarding execution, the judgment will be reversed and the cause will be remanded, with directions to the trial court to proceed in accordance with the views herein expressed."

So, in this case, we hold that the finding of the trial court insofar as the indebtedness of appellant to defendant Malan is concerned is entirely regular and that it is unnecessary to try again that issue in the trial court. The action of the trial court was irregular only insofar as it gave judgment and awarded execution prematurely against the garnishee. Substantial justice requires that the judgment be reversed thus far only.

To the end, therefore, that the court may make proper orders on the garnishee to pay the amount found due by it to defendant Malan to the sheriff or into court before giving final judgment and awarding execution against appellant, the judgment is reversed and the cause remanded with directions to the trial court to proceed in accordance with the views and facts herein expressed. We have disposed of all the assignments of error properly made by appellant and carried forward in its brief by it and of all the points made therein. All concur.