THOMAS J. KNIGHT AND LAURA E. KNIGHT v. MERCHANTS AND MANU-
FACTURERS INSURANCE COMPANY OF NEW YORK, A CORPORATION.—
188 S. W. (2d) 77.

Kansas City Court of Appeals. April 30, 1945.

*Fenton Hume* and *Arnold E. Wymore* for appellant.

*Claude L. Schenck* for respondents.

DEW, J.—Plaintiffs (respondents) brought suit on a fire insurance policy for its face amount of $1000, for an additional 10 per cent thereof for vexatious refusal to pay, and for attorneys' fees. The

defense was alleged violation of the Sole Ownership Clause of the policy. The reply pleaded waiver. The verdict was for plaintiffs for $1000 under the policy and for $350 attorneys' fees. The trial court ordered remittitur of the $350, which remittitur was made. Defendant's motion for new trial being overruled, defendant appealed.

Plaintiffs in their petition alleged the issuance of the policy by defendant on January 30, 1942; payment of premium therefor; described the property as "their dwelling house," situated at 4007 East Seventeenth Street, Kansas City, Missouri; the term of the policy of one year from said date; the value in excess of the policy amount; that after the issuance of the policy one Clarence Dudley brought suit against the plaintiffs and others, in the Circuit Court of Jackson County, Missouri, claiming an interest in said property, in which case, on October 27, 1942, it was decreed that said Dudley was owner of said property, "subject to a life interest in plaintiff Thomas J. Knight;" that there was a total loss of said house by fire on December 2, 1942; that notice was given to defendant of said loss; that defendant permitted said policy to remain in force and effect, and not until December 30, 1942, was notice given the plaintiffs that defendant considered the terms of said policy breached; that demand was made of defendant for payment of the amount of the policy; that defendant has failed and refused to pay same; that such refusal was vexatious and without just cause. Plaintiffs prayed for $1000, the amount of the policy, plus 10 per cent for vexatious refusal to pay, and attorneys' fees, with interest from December 2, 1942.

Defendant's answer admitted issuance of the policy and set forth its Sole Ownership Clause, to-wit:

"This entire policy, unless otherwise provided by agreement indorsed hereon or added hereto, shall be void . . . if the interest of the insured be other than unconditional and sole ownership . . ."

Defendant, in its answer, alleged that when the policy was issued, plaintiffs claimed to be the sole and unconditional owners of said property; the answer further admitted the Dudley suit and decree thereon showing ownership of the property in Clarence Dudley, subject to a life interest of Thomas J. Knight in one-third of the value of the premises; that Laura E. Knight had no insurable interest in the property, and that Thomas J. Knight is not sole and unconditional owner thereof; that as soon as defendant discovered the title situation it tendered to plaintiffs the premium paid, and alleged that it had no notice of the Dudley suit or decree until after the fire.

Plaintiffs by their reply pleaded that notice had been given to one Fred Morris of the pendency of the Dudley suit soon after it was filed; alleged that plaintiffs had for several years secured policies from the defendant through said Morris as agent for defendant; that a custom of such dealing had been established so as to estop defendant

from denying that said Morris was its agent; that on December 3, 1942, notice of said decree affecting plaintiffs' title was given to said agent and to an adjuster for the defendant, and that the defendant did not until December 30, 1942, notify plaintiffs that the defendant considered the "Unconditional Ownership Clause" had been breached, and that by reason of the premises, defendant had waived forfeiture of said policy.

Such of the essential facts in evidence as are admitted or undisputed are as follows:

In 1925, the house and premises in question belonged to Lucy Holman, then a widow. She was the mother of Clarence R. Dudley. In that same year Lucy Holman married plaintiff Thomas J. Knight; that they lived on said premises, and plaintiff Thomas J. Knight, out of his own means, repaired the property and paid off an existing mortgage on it; on January 11, 1933, Lucy (Holman) Knight executed a deed to the property to herself and plaintiff Thomas J. Knight, her then husband. Lucy (Holman) Knight died in 1939, intestate. Plaintiff Thomas J. Knight, her surviving husband, one of the plaintiffs herein, remained in possession of said premises and claimed ownership thereof under said deed from his wife Lucy (Holman) Knight, deceased.

On January 26, 1940, plaintiff Thomas J. Knight married plaintiff Laura E. Knight. On or before February 14, 1940, both plaintiffs executed and delivered a deed to said property to Knute Anderson and Mary E. Anderson. The latter grantees were merely straw parties, and thereafter on the same date, executed and delivered their deed to the property back to the plaintiffs herein as husband and wife. Plaintiffs continued thereafter to claim and possess the said property.

On February 2, 1941, plaintiffs were sued by Clarence R. Dudley, who, as aforesaid, was the son of Lucy (Holman) Knight, deceased, former wife of plaintiff Thomas J. Knight. Service was had in that case on the plaintiffs herein on the same day. The purpose of that suit was to set aside the said deed of Lucy (Holman) Knight to herself and Thomas J. Knight of the property involved herein, on the ground of mental incompetency of Lucy (Holman) Knight.

Four days prior to the date of service in the Dudley suit, plaintiffs had applied through said Fred Morris for a fire policy on the dwelling house here in question, following which a policy (not the policy herein sued on) was issued to them by this defendant insurance company, covering said dwelling for a period from January 30, 1941 to January 30, 1942. That policy was signed by Harold Hobart, Agent. It was delivered to plaintiffs by said Fred Morris on April 4, 1941, and the premium therefor was paid to him.

The policy in question was issued by defendant to the plaintiffs on said premises in the total sum of $1000, dated January 30, 1942;

was signed by Harold Hobart, Agent; was delivered two or three weeks after its date to the plaintiffs by said Morris; and the premium therefor was paid to him. This policy, the one sued on herein, contains the Sole Ownership Clause heretofore quoted.

On the outside or cover of the policy sued on, and below the number of said policy and below the name of the company, appears a sticker reading "Fred D. Morris Insurance 4804 East 24 St. Kansas City, Mo. Benton 9353."

The Dudley case came to trial thereafter on October 27, 1942, resulting in a judgment for Dudley, setting aside the deed aforesaid from Lucy (Holman) Knight to herself and Thomas J. Knight, dated January 11, 1933. The record shows that the plaintiffs herein filed a motion for new trial in the Dudley case on October 30, 1942; that said motion was overruled on November 13, 1942; that on November 18, 1942, the plaintiff, Thomas J. Knight, applied for an appeal in the Dudley case and said appeal was allowed to the Supreme Court of Missouri, and the amount of the appeal bond fixed. Plaintiff Thomas J. Knight did not thereafter perfect the appeal.

Thus, when said Dudley decree became final, the fee title to said premises described in the policy sued on, was determined to be vested in Clarence R. Dudley, subject only to a life or dower interest of plaintiff Thomas J. Knight in and to one-third of the value of said property for and during his life, and that said Thomas J. Knight had never had any other interest therein.

Thereafter, on December 2, 1942, the house on the property in question was destroyed by fire, or at least the loss thereon exceeded $1000, the amount of the policy. Plaintiffs notified said Morris during the fire, and he notified the defendant company; a claim of loss was filed and adjusters later appeared and investigated the same. On December 30, 1942, defendant wrote the plaintiffs, denying liability on account of the fact that the insured were not the sole owners of the property, and had not been at any time during the period of the policy, and referred to the decree of the court to that effect (the Dudley decree). In that letter defendant returned to the plaintiffs the premium paid, with interest.

It was admitted that the general agent for defendant in the Kansas City area, at all times in question, was Harold Hobart, who signed the policy; that Fred D. Morris "was a broker who on occasions brokers policies with Mr. Hobart, and that he did procure the policy in question from Mr. Hobart, and that thereafter he delivered the policy and collected the premium on the same;" that the loss in question exceeded the amount of the policy, and that proof of loss was filed. Plaintiffs introduced evidence tending to show that the policy obtained the preceding year on the property involved was likewise obtained by their application to Fred D. Morris; that it, too, bore a similar sticker of Fred D. Morris; that he delivered that policy

to plaintiffs and that payment of the premium therefor was made to him; that at the time he delivered that policy and received payment of the premium (April, 1941), plaintiffs then told Morris of the pending Dudley suit, attacking plaintiffs' title; that since 1938, plaintiffs had obtained other fire insurance policies from Morris on other property, all of which were issued by defendant company; that plaintiffs had a fire loss on another house, report of which was made at the time to Morris; that when the policy sued on was delivered to plaintiffs by Morris (February, 1942), plaintiffs again told Morris they had been sued by Dudley, and that the property was in the hands of the court, and that Morris "didn't think that would make any difference;" that on July 13, 1942, Morris called on plaintiffs on occasion of furnishing fire insurance to parties living on the floor above plaintiffs, and on that occasion plaintiffs told Morris of the Dudley case and told him "They haven't done anything yet, we thought maybe they had forgotten about it."

Plaintiffs also testified that they had at all times remained in possession of the property, claimed interest therein, had made extensive repairs on same, collected rents therefrom and, after the fire, joined with Dudley in a conveyance of the property to parties living next to it, plaintiffs receiving a small consideration therefor.

Defendant claimed that it had no knowledge or notice of the defective title until after the fire. Plaintiffs contend notice was given to Fred D. Morris of the pending Dudley suit, as aforesaid, and that under the evidence, defendant is estopped to deny Morris was its agent; that his knowledge is imputable to defendant; that because defendant did not claim a breach of the policy until after the fire, it has waived the forfeiture of said policy thereby.

In behalf of defendant, Fred D. Morris testified, in substance, that he was a licensed insurance broker only; that he "brokers" from various insurance companies; that he does not issue any policies nor does he sign any; that he always puts his sticker on policies obtained by him from clients regardless of what company issued them; that he always obtained policies from some one or more of the various companies he did business with when a client would apply to him for insurance; that whenever clients reported any losses he would report them to the company carrying the insurance; that he gave only a part of his fire insurance business to the Hobart Agency; that he pays monthly all of his accounts to the various insurance companies through which he obtains policies; that whenever he receives notice of change of conditions of ownership for policies he reports the same to the company writing the policy; that since 1936, he had done business in the above manner with the Hobart Agency; that the policies he had obtained for the plaintiffs had all been issued by the defendant; that he had always collected the premiums therefor from the plaintiffs, and had reported to the company the losses which the plaintiffs reported to him. Mr. Morris was asked:

"Q. Mr. Morris, when was the first time you ever heard anything about this litigation between Dudley and the Knights with reference to the title of this property? A. It was a day or two after the fire.

"Q. And who told you about it at that time? A. Mrs. Brown.

"Q. (The Court) Who? A. Mrs. Knight.

"Q. (Mr. Hume) Her name used to be Brown? A. That is right.

"Q. No one else had told you anything about this Dudley litigation nor had the Knights prior to that time? A. No, sir.

"Q. They told you after the fire? A. Yes, sir."

On cross-examination of plaintiff Laura E. Knight, it was developed that defendant had taken her deposition October 21, 1943; that certain changes in the same had been made at her request; that the deposition had not been signed until the date of trial; that in the deposition she had been asked if plaintiffs had told Morris of the Dudley suit when Morris delivered the policy in question, to which she had answered: "Well, maybe I did, I don't remember." She had asked for and obtained a change in that answer to: "Yes, and also at time the second policy was delivered and also when I paid for 1st policy."

At the trial she explained that she had not had time at the deposition to think it over. She was asked in her deposition if she could not recall whether she talked with Morris between the date of the policy and the date of the fire. To this she answered: "Well, I just don't remember." This she changed to: "Yes, I talked to him at the time the policy was ordered and at the time of payment of the policy and also on July 13, 1942, and also at the time 1st policy was paid." Again she was asked in her deposition:

"Q. It don't make so much difference, Mrs. Knight, whether you talked to Mr. Morris or not, but the question we are interested in is whether you told Mr. Morris about this lawsuit that Mr. Dudley brought between the time the policy was issued and the time of the fire. Do you recall talking to Mr. Morris about the Dudley lawsuit? A. I couldn't truthfully say yes, but I did talk to him, because we had him insure the people's furniture that lived upstairs in our house, and we also sent him over to another place to take out insurance."

This she changed to read:

"A. Yes, and we told him about it at the time the policy was delivered and at the time we paid him."

She explained that the fact that defendant refused to pay the loss after the fire refreshed her memory of the conversation with Mr. Morris, to which she testified at trial.

Likewise, the deposition of Thomas J. Knight had been taken on the same day, which he signed on the date of the trial, April 24, 1944, after changes had been made at his request. He first testified in his deposition that Morris called at his house when the policy in question was ordered; that he did not talk again to Morris until the date of the fire, nor to anyone else for defendant company; that he did not

think he was present at any conversation between Mrs. Knight and Morris regarding the Dudley suit; that he did not think he had ever told Morris about the suit except after the fire. He testified:

"Q. Well, after they got a judgment against you, did you tell Mr. Morris anything about the judgment? A. No, sir, I did not, positively, I did not.

"Q. And at the time the suit was filed you told him you were contesting the suit, and you still claimed to be the owner of the property? A. I did not.

"Q. You didn't tell him that? A. No, sir.

"Q. What did you tell him? A. I didn't tell him anything. I don't know as I ever seen Mr. Morris any more.

"Q. I mean between the time the policy was written and the time of the fire. You just stated you told him about this Dudley suit. A. I did after the fire.

"Q. After the fire? A. Yes.

"Q. I mean between the time the policy was written and the time of the fire, did you tell Mr. Morris, or any other agent of the company anything about this Dudley suit? A. Well, I don't recall that ever I seen Mr. Morris between when the policy was tendered up until the time of the fire.

"Q. Would you say you didn't see him between those dates? A. I wouldn't think so.

"Q. But you would say that you did not tell him about this Dudley suit between the time the policy was issued and the time of the fire? A. I told him about the Dudley suit, but I didn't tell him any more about it.

"Q. When did you tell him about the Dudley suit? A. After the fire.

"Q. After the fire? A. After the fire.

"Q. But not before the fire? A. No, sir, I never seen Mr. Morris after that time."

While the changes made by plaintiff Thomas J. Knight in his said deposition are not shown, he explained that he could not remember what he had first stated in his deposition; that he had had a stroke of double pneumonia and "my mind don't run back two or three years ago only when I get this stuff renewed into my mind."

At the trial he testified that he first told Mr. Morris about the Dudley suit in 1941, about September, although he was not positive; that he again told him about it when the policy was delivered; again in July, and later after the fire.

Defendant's first contention is that its demurrer to the evidence at the close of all the evidence should have been sustained. There can be no doubt that the demurrer to the evidence as to plaintiff Laura E. Knight should have been sustained. Under both her petition and the evidence she at no time owned any interest in the property insured.

No interest accrued to her in her husband's life interest in one-third of the value of his former wife's real estate, nor could any such interest be created out of the estoppel or waiver pleaded.

As to the plaintiff, Thomas J. Knight, the demurrer requires consideration of other features of the evidence. He at least did have an interest in the property, although not the ownership contemplated by the policy sued on, nor the unlimited life estate as would naturally be presumed from the allegations of his petition. As seen, there was conflicting evidence as to whether the broker Fred Morris was told, before the fire, of the pending suit by Dudley, attacking plaintiffs' title to the property. It is true the testimony of the plaintiffs in their depositions on this subject contradicted their testimony at trial. Under the circumstances, we must assume from the verdict, for the purposes of this appeal, that Fred Morris was so told of that suit before the decree. [McNatt v. Wabash Ry. Co., 341 Mo. 516, 108 S. W. (2d) 33.]

The question that logically follows is: Was Fred Morris, when told of the pending Dudley suit, agent for the defendant insurance company in respect to notice of litigation coming to him, pertaining to the title to the property insured? It is admitted that Morris was an insurance broker and not the general agent for defendant company. As a general rule, an insurance broker is agent for the insured. To constitute him otherwise, it must be shown that he was authorized in the particular instance to represent the insurer as its agent. In Luthy v. Northwestern National Insurance Company, 224 Mo. App. 371, 20, S. W. (2d) 299, this court quoted with approval the following principle of law:

" 'Unless otherwise provided, an insurance broker represents the insured, although he may represent either the insured or the insurer, or both, for certain purposes. It is a question of fact to be determined by the evidence. He may be the agent of the insurer for the purpose of delivering the policy and collecting the premiums, for the collection of the premiums only, or not even for that purpose.' "

In that case, as in the case at bar, it was shown that the broker placed stickers on the policies that he procured from insurance companies for his client. There, as in this case, the sticker did not describe him as "agent" of defendant, and, as in the present case," there is no evidence tending to show that defendant knew he was placing these stickers on policies."

This court in Gilbert v. Malan, 231 Mo. App. 469, 100 S. W. (2d) 606, again quoted and followed the principle quoted, stating, l. c. 612:

"It is true that an insurance broker, unless otherwise authorized and provided, represents the insured and, unless otherwise shown by the evidence, is to be regarded as the agent of the insured.

"However, such a broker may enlarge his relationship with the company for which he procures business so as to become the agent

of such company in one or more or all the particular matters involved in connection with the procurement and making of an application, the issuance and delivery of a policy thereon, and the collection of the premiums on such policy. (Citations.)

"Whether he has so enlarged his relationship as to become the agent of the company in such particular matters or one or more of them and not the agent of the insured is a matter of fact to be determined from the evidence in each particular case. (Citations.)

"He is not necessarily the agent of either of the parties throughout. He may be the agent of one of them in the transaction of some of the particular matters involved and of the other in the remainder of the matters involved. Thus, he may be the agent of the insured in taking and placing the application and of the company in the issuance and delivery of the policy and the collection of the premiums thereon."

Again in Pringle v. Aetna Life Insurance Company, 123 Mo. App. 710, 714, 101 S. W. 130, 131, the court said:

"It is a general statement of law that a broker is the agent of the assured, and not of the insurer. If he is the agent of the insurer, it is because of some special condition or circumstance in the particular case. 'A mere insurance broker cannot be converted into an agent of the insurance company, without evidence of some action on the part of the company, or of facts, from which a general authority to represent it might be fairly inferred.' "

Applying the above principle to the evidence in the instant case, Morris no doubt was the agent of the insured in the procurement of the policy sued on. For the purpose of delivering the policy and collecting the premiums therefor he no doubt was the agent of defendant. As to receiving notices of loss from the insured and reporting the same to the insurance company, there is no evidence of his agency for either party. The evidence was that when losses occurred, the plaintiffs advised Morris of them, and he notified the insurance company.

We find no evidence that will justify the conclusion that the authority of Morris, a broker, to deliver the policy and to receive premiums therefor gave him authority, impliedly or otherwise, to receive notice of a title controversy respecting the property covered by the policy so as to bind the defendant by such knowledge so acquired.

In the case of Luthy v. Northwestern National Insurance Company, *supra,* the insurance broker in that case procured the policy from the agents of the insurance company, delivered the same to the insured and collected premiums therefor. The policy insured household goods while located on certain premises described. The property had been removed from the premises mentioned to another location, where the same was destroyed by fire. The policy provided that it would become void if the property were removed without the written consent of the insurance company. The broker through whom the insured had obtained the policy had been notified of the removal before the fire.

He did not pass the information on to the insurance company. In that case, as stated above, we followed the quoted principle regarding the general authority of an insurance broker and stated that:

"It is unnecessary for us to discuss the question of whether there is sufficient evidence tending to show that plaintiff did not regard or treat Lacaff as her agent, but, assuming that there is such evidence, there is no question but that he, Lacaff, was the agent of the defendant for the purpose of delivering the policy and collecting the premiums thereon. (Citations.) However, we fail to find any facts in the record showing that Lacaff was the agent of defendant for any other purpose than this, even if it could be said that the facts show that he was the agent for this purpose. We think, unquestionably, that he was no such an agent of defendant as to have authority to receive notice, several months after the policy was delivered, of the removal of the property."

It is true that in the *Luthy case* there was no evidence of previous policies having been obtained through the broker, nor was claim there made that notice of the removal was given at the time of the delivery of the policy. However, in the present case, we do not believe that a custom was established, as pleaded, consisting of a few transactions between Morris and the plaintiffs, to render the above principle of law inapplicable to this case.

An inquiry suggests itself at this point as to what was the information which the plaintiffs claimed was brought to the attention of the broker Morris. At best, he was told at the various times mentioned by plaintiffs that a suit was brought and was then pending to question the plaintiffs' title to the premises insured. At all of such times the plaintiffs themselves were steadfastly maintaining the validity of their title, and they are in no position now to insist that on such information defendant should have canceled its policy. The plaintiffs were in far better position to know the facts and the truth involved in the title controversy than was the defendant, which was in no way a party to the litigation. There is no evidence that the defendant knew of the decree at the time it was rendered, either through information to Morris, or otherwise. After the fire occurred, December 2, 1942, according to plaintiffs' evidence, the decree was called to the defendant's attention. The decree was rendered October 27th, nine months after the date of the policy, and even then, the title was not finally determined by the decree, because the judgment was suspended by the filing of a motion for new trial by the plaintiff Thomas J. Knight and his appeal following thereafter, which was still pending December 30, 1942, when defendant denied liability for the loss of December 2, 1942.

Plaintiffs contend, however, that because the defendant permitted the policy to remain in effect following the date of the fire, and did not deny liability until a little over three weeks thereafter, by reason

thereof and of the premises, the defendant waived the forfeiture under the Unconditional Ownership Clause. Since, as we have found, the knowledge of the broker Morris of the pending Dudley suit cannot be imputed to defendant; that even if it could be, the mere knowledge of a suit filed, being resisted and defended by the insured was not sufficient to require a cancellation in order to avoid estoppel or waiver; that there is no evidence of notice of the decree when it was rendered; we find no merit in this contention. It is evident that the plaintiffs did not suffer any loss by reason of the continuance of the policy after the alleged notices of the pending litigation claimed to have been given to Morris, for the reason that, as stated, the determination of the title by the litigation never became final up to the time the defendant denied liability. On the contrary, as stated, the plaintiffs were continuing their defense to the Dudley suit. The plaintiffs are in no position to make such claim for the reason that the litigation, the notice of which they claim as a basis for the plea of waiver and estoppel, was prevented from becoming a final determination of the plaintiffs' lack of title by the plaintiffs' own resistance to that suit and by their pending appeal therein. It is our conclusion that the demurrer to the evidence as to plaintiff Thomas J. Knight should likewise have been sustained.

Defendant makes complaint of Instruction 2 given at the request of plaintiffs. Since the case has to be reversed on account of the foregoing, it will not be necessary to consider the instruction given.

The judgment of the Circuit Court in this cause is reversed. *Cave, J.,* concurs; *Bland, P. J.,* concurs in result.