Charles MORROW, Plaintiff-Appellant,

v.

Herman LOEFFLER, Defendant,

General Insurers, Inc., Garnishee-Respondent.

No. 45634.

Supreme Court of Missouri.

Division No. 1.

Dec. 10, 1956.

Motion for Rehearing or to Transfer to Court en Banc Denied Jan. 14, 1957.

N. Murry Edwards, Ninian M. Edwards, St. Louis, for plaintiff-appellant.

J. D. Leritz, J. L. Leritz, St. Louis, for garnishee-respondent.

HOLMAN, Commissioner.

On April 3, 1950, plaintiff, Charles Morrow, obtained a judgment in the Circuit Court of St. Louis County, in the sum of $7,500 against defendant Herman Loeffler. In the instant garnishment proceeding plaintiff sought to collect said judgment, together with interest thereon, a ten percent penalty, and $2,500 attorney fee, from General Insurors, Inc., garnishee, by reason of its alleged agreement to issue a certain policy of automobile liability insurance. At the close of plaintiff's evidence the trial court directed a verdict for the said garnishee. Plaintiff has duly appealed from the ensuing judgment. We have jurisdiction since plaintiff sought to recover a total amount which, "exclusive of costs, exceeds the sum of seventy-five hundred dollars." Article V, Section 3, Constitution of Missouri, 1945, V.A.M.S.

Plaintiff here contends that the trial court erred in sustaining garnishee's motion for a directed verdict, and further erred in sustaining objections to and excluding certain testimony offered by plaintiff. In this situation we deem it necessary to state the evidence in some detail. In determining whether plaintiff made a case for the jury we must give him the benefit of all evidence that is favorable to him and every reasonable and favorable inference that may be drawn therefrom. All of the evidence was offered by plaintiff and it will be noted that some of it is conflicting and is adverse to him. In this connection we observe that while a plaintiff is bound by his personal testimony, he is not bound by his other witnesses in the respects in which he has offered other evidence which is contradictory. Burr v. Singh, 362 Mo. 692, 243 S.W.2d 295.

Defendant Loeffler testified that about the last of March, 1948, he bought a 1937 model Ford automobile. At that time he was 20 years old and for that reason had the title issued in the name of his brother-in-law, Harry Paul; that he was then dating the sister-in-law of one William Venker and that she lived in Venker's home; that he saw Venker two or three times a week and, during the first week in May, Venker asked him to let him "write up a liability policy" on the car; that he then paid Venker $20 to apply on the premium for the policy, which was to be a regular liability policy, for one year with limits of $10,000 and $20,000; that he gave Venker information concerning the car, such as make, model, serial number, etc.; that he paid Venker $27 the following week; that no policy was ever delivered to him and no part of the $47 was returned; that he was driving this car when it struck the plaintiff on June 13, 1948, and shortly thereafter notified Venker of the accident; that sometime thereafter Venker calld him

on the phone and said he had the premium to return to him, but "I told him as far as I was concerned I was covered and I didn't want the premium back," and that he had done everything Venker had asked him to do in regard to procuring this insurance policy.

William Venker testified that in 1948 he was employed by the Adam Rosenthal Agency of the General American Life Insurance Company as an agent to sell life, health, and accident insurance. He stated that he was licensed by the State to sell that type of insurance; that he did not have a license to write insurance as a broker in any other company and had never written any insurance for garnishee, General Insurors; that he had obtained an automobile insurance policy for his mother and another for a Mr. Landwehr through Mr. Rosenthal; that on those occasions he wrote the information about the car on a piece of paper and gave it to Mr. Rosenthal who handled the details in procuring the policies; that in May, 1948, defendant asked him to obtain a liability insurance policy with $10,000 and $20,000 limits and agreed to give him $5 or $10 a week (and actually paid a total of $37) to be kept and used for the premium when it became due; that the defendant gave him the information concerning the car and shortly thereafter the witness approached Mr. Rosenthal in regard to obtaining the coverage. Mr. Rosenthal was busy at the time and authorized Venker to call General Insurors in his name and to give them the information, which was accordingly done. Later that day Rosenthal told Venker that General Insurors had called back and said they did not want to "make that coverage on that car." At that time Mr. Rosenthal stated to Venker that he thought he could "find a place to put that insurance" and Venker let it go at that. Later that day Venker called General Insurors and attempted to find out why they didn't write the policy, but stated that he got no satisfaction about that; that General Insurors had never at any time agreed to issue a policy; that after the accident defendant asked him to go with him to see plaintiff at the hospital and he did so; that during that visit plaintiff asked him if the defendant was insured and he replied that he did not know; "that the information had been given to my boss, the insurance had been refused once, * * that I would find out as soon as my boss would return to town."

Mr. Rosenthal testified that he was district manager for General American Life Insurance Company; that he had a brokers' license which permitted him to place insurance other than life; that he had an account with General Insurors and placed one or two policies a month with them (nine policies in 1948). Ledger sheets were admitted in evidence which showed the extent of his business with General Insurors during 1946, 1947 and 1948. Mr. Rosenthal testified that he never had any authority to bind General Insurors; that he would offer them business and they would either accept it and write the business or would reject the offer. It is apparent that Mr. Rosenthal's principal business was the operation of his life insurance agency and that the business of writing casualty insurance was decidedly a sideline. He stated that he would let his commissions accumulate and would use the credit when the premium on his automobile policy became due once a year; that he allowed Venker the commission on the two policies that he had the witness procure for him; that, on policies obtained from General Insurors, Rosenthal would generally deliver the policies by mail and would collect the premiums, athough the statement sent to the policyholder specified that the check be made payable to General Insurors. He testified that Venker spoke to him about obtaining the policy for defendant and that he was busy at the time and requested Venker to convey the information to General Insurors in his name; that later in the day someone from General Insurors called and said they could not insure that risk; that he then

tried to place the risk with United States Fidelity and Guaranty Company but they would not accept it either, and that he promptly advised Venker of each of these refusals.

There is little definite evidence in the record as to the type of business conducted by General Insurors. However, we think there is sufficient evidence from which it may be inferred that this company was engaged in conducting a general agency which issues policies as agents for various insurance companies, but there is nothing to indicate that General Insurors was authorized to actually insure any risks in its own behalf.

■ Plaintiff contends that the court erred in refusing to submit this case to the jury because all of the evidence indicated that the alleged broker, Rosenthal, and his employee, Venker, were actually agents of the garnishee, and hence the garnishee, is liable to plaintiff (judgment creditor) on the agreement of these agents to insure the automobile of defendant (judgment debtor). We think it should be noted at the outset that Venker never had any contact with General Insurors except in the name of Mr. Rosenthal. Garnishee contends that any authority Rosenthal may have had could not have been delegated by him to Venker. There is considerable support for this contention in the cases. See Klaber v. Corporation of Royal Exchange Assur. of London, England, Mo.App., 48 S.W.2d 62; McClure v. Mississippi Valley Ins. Co., 4 Mo.App. 148. However, we have concluded that for the purposes of this decision we shall assume (but do not decide) that Venker was possessed of the same authority, if any, as was Rosenthal, in connection with placing policies with garnishee.

It is undisputed (as relates to effecting casualty insurance) that Rosenthal was licensed as a broker and not as an agent. A broker is defined by statute as, "Whoever, for compensation, acts or aids in any manner in negotiating contracts of insur-

ance or reinsurance, or placing risks or effecting insurance or reinsurance for any person other than himself, and not being the appointed agent or officer of the company in which such insurance or reinsurance is effected, shall be deemed an insurance broker * * *." Section 375.270, subd. 1, RSMo 1949, V.A.M.S. The law relating to the agency of a broker is well settled in this state. We quote from Knight v. Merchants & Manufacturers Ins. Co., 239 Mo.App. 107, 188 S.W.2d 77, 82, in which the authorities are carefully reviewed, as follows:

"As a general rule, an insurance broker is agent for the insured. To constitute him otherwise, it must be shown that he was authorized in the particular instance to represent the insurer as its agent. In Luthy v. Northwestern National Insurance Company, 224 Mo.App. 371, 20 S.W.2d 299, 300, this court quoted with approval the following principle of law: ' "Unless otherwise provided, an insurance broker represents the insured, although he may represent either the insured or the insurer, or both, for certain purposes. It is a question of fact to be determined by the evidence. He may be the agent of the insurer for the purpose of delivering the policy and collecting the premiums, for the collection of the premiums only, or not even for that purpose." ' * * *

"This court in Gilbert v. Malan, 231 Mo. App. 469, 100 S.W.2d 606, loc. cit. 612, again quoted and followed the principle quoted, stating: 'It is true that an insurance broker, unless otherwise authorized and provided, represents the insured and, unless otherwise shown by the evidence, is to be regarded as the agent of the insured. * * * However, such a broker may enlarge his relationship with the company for which he procures business so as to become the agent of such company in one or more or all the particular matters involved * * *. He is not necessarily the agent of either of the parties throughout. He may be the agent of one of them in the

transaction of some of the particular matters involved and of the other in the remainder of the matters involved. Thus, he may be the agent of the insured in taking and placing the application and of the company in the issuance and delivery of the policy and the collection of the premiums thereon.'

"Again in Pringle v. Aetna Life Insurance Company, 123 Mo.App. 710, 714, 101 S.W. 130, 131, the court said: 'It is a general statement of law that a broker is the agent of the assured, and not of the insurer. If he is the agent of the insurer, it is because of some special condition or circumstance in the particular case. "A mere insurance broker cannot be converted into an agent of the insurance company, without evidence of some action on the part of the company, or of facts, from which a general authority to represent it might be fairly inferred."' "

With the foregoing principles in mind we have reviewed the evidence herein. It appears clear that Rosenthal had no specific authority to bind General Insurors or to act as its agent in any manner. It is also apparent that said garnishee did not rely on the judgment of Rosenthal in selecting risks to be accepted but made its own investigation thereof before determining whether a policy should be issued. Moreover, we find no evidence in this record from which it may be inferred that the garnishee had authorized this broker (Rosenthal) to represent it as its agent in any matter relating to the selection of risks or the issuance of (or agreement to issue) insurance contracts. The most favorable inference that can be drawn from the evidence is that Rosenthal may have become the agent of the garnishee for the limited purpose of the delivery of policies and the collection of the premiums therefor. In the instant case, since no policy was issued to defendant (or to his titleholder, Harry Paul), it necessarily follows that Rosenthal was not the agent of General Insurors in any respect. As we view the situation, the

matter was completely terminated, insofar as the garnishee, General Insurors, was concerned, when it rejected the risk and refused to issue a policy. Thereafter, Rosenthal continued in the performance of his duty, as a broker and as agent for defendant, and sought to obtain the policy from another company, but was without success. Cases cited by plaintiff, wherein a broker has been held to be the agent of the insurer in various respects, can all be distinguished from the instant case upon the particular factual situation involved.

In connection with the foregoing point plaintiff complains of the ruling of the trial court in excluding testimony of Loeffler to the effect that when he paid the $47 for the premium, Venker told him that he represented General Insurors, and that he and his brother-in-law were insured with said company against liability in the operation of the automobile, for one year, with limits of ten and twenty thousand dollars. This testimony would not be admissible for the purpose of proving that Venker was the agent of garnishee because " 'neither the fact nor scope of agency can be established by the mere out of court declarations of the alleged agent.' " J. R. Watkins Co. v. Lankford, 363 Mo. 1046, 256 S.W.2d 788, 792. It therefore follows that these declarations would not be admissible for any purpose unless there was other evidence to indicate that Venker was an agent of the garnishee so that his statements would be binding upon it. Since we have held that he was not such an agent and had no authority to bind the garnishee, the evidence was clearly inadmissible and the court properly sustained the objection thereto. In support of this contention plaintiff has cited Ormsby v. Laclede Farmers' Mut. Fire & Lightning Ins. Co., 98 Mo.App. 371, 72 S.W. 139; Fields v. German American Ins. Co., 140 Mo.App. 158, 120 S.W. 697; Smith v. Hartford Fire Ins. Co., Mo. App., 272 S.W. 700; Woolfolk v. Home Ins. Co., Mo.App., 202 S.W. 627; and Travis v. Continental Ins. Co., Mo.App., 179 S.W. 766. An examination of these

cases will disclose that each deals with the statements and knowledge of admitted agents of the insurance company and none of them relate to the conduct of a broker.

 The rulings we have already made will also dispose of plaintiff's contention that Venker, on behalf of General Insurors, made a valid oral contract of insurance with Loeffler. As indicated, no such contract would be binding upon the garnishee unless made by its authorized agent.

 The final points briefed relate to questions of waiver and estoppel. It is said that because Venker retained the premium paid by defendant until after the accident, garnishee has waived all of its defenses to the plaintiff's action for the benefit of said insurance. It is contended further that since Venker collected the premium for the policy and told defendant that he was covered by liability insurance the garnishee is estopped to deny that defendant was so insured. It is apparent that each of these points is based upon the premise that Venker and Rosenthal were acting as the agents of the garnishee. Since we have held that there was no such agency it is elementary that the garnishee would not be estopped or held to have waived any defense by reason of the acts or conduct of either of these men. The cases cited by plaintiff in support of these points have no application as they all relate to the conduct of admitted agents of insurers.

While we have endeavored to deal with each point briefed by plaintiff it will be noted from what we have said that all of the points were actually disposed of by our ruling that Rosenthal and Venker were not acting as agents of garnishee in their dealings with the defendant. As indicated, we have concluded that the trial court properly directed a verdict for the garnishee, General Insurors, Inc., and that no error was committed in ruling upon the admission of evidence.

Our conclusion herein makes it unnecessary to consider the contention of the garnishee to the effect that it is an insurance agency representing various insurance companies and is not licensed or permitted to engage in the insurance business or to issue an insurance policy in its own behalf, and hence could not, in any event, be held liable upon any of the theories relied upon by plaintiff.

The judgment is affirmed.

VAN OSDOL and COIL, CC., concur.

PER CURIAM.

The foregoing opinion by HOLMAN, C., is adopted as the opinion of the court.

All concur.