H & H MANUFACTURING COMPANY, a corporation, Plaintiff-Appellant,

v.

CIMARRON INSURANCE COMPANY, Defendant-Respondent.

No. 7588.

Springfield Court of Appeals.

Missouri.

May 9, 1957.

Not to be published in State Reports.

Ray E. Watson, Watson & Tudor, Joplin, for plaintiff-appellant.

Herbert Van Fleet, Joplin, for defendant-respondent.

RUARK, Judge.

In this suit for recovery under a policy of fire insurance a jury was waived, and plaintiff appeals from an adverse judgment of the trial court.

The policy, for which no written application was made, was issued to plaintiff on April 3, 1952, insuring for the sum of $1,500 and for a term of three years *the contents of a "One story Composition roof Concrete Block building * * * occupied as a Furniture Manufacture and repair situated 1220 West 13th Street."* Following this description of the property insured appears the following: "Note—For information only.—The property covered under this item *consists principally of Machinery and Spraying equipment* and is located on the First floor of the building described in this policy."

The plaintiff corporation is engaged in the manufacture and repair of furniture. The "main building" used in this business is described as a one-story concrete block structure 100 by 150 feet with composition roof. Immediately west and six feet to the rear of this building, but on the same tract of ground, is a separate much smaller building known as the "paint shop." This paint shop is also single-story, of concrete

block construction, 30 by 40 feet, with steel sash windows and wooden type roof. The principal manufacturing and repair operation is carried on in the "main building." The smaller building is, as plaintiff's witness said, used "strictly" as a paint shop. The main building contained machinery but no spraying equipment and, conversely, the paint shop contained spraying equipment but no machinery or other equipment.

On April 13, 1953, a fire occurred in the paint shop, and it is admitted that plaintiff suffered damage to contents in the amount of $1,354.28. Plaintiff sued for recovery of its loss and the insurer defended on the ground that its policy did not insure the contents of the paint shop but, instead, insured the contents of the main building; and such issue is the sole question for determination here.

The policy in question was procured from the defendant's authorized issuing agent (one Einsel) by W. B. (Doc) Hardin, who was an insurance broker, a friend of the officers of the plaintiff corporation, and who handled some of the plaintiff's insurance business. According to plaintiff's manager and secretary-treasurer, Harshberger, who was plaintiff's only witness, plaintiff had built the separate paint shop on the advice of broker Hardin, for the reason that if painting were done in the main building insurance rates would be increased so as to become prohibitive. Hardin was familiar with the location of plaintiff's buildings and had many times discussed with Harshberger matters concerning insurance on such property. Defendant produced the man in charge of its fire and windstorm claims department, who testified that by the records of the company W. B. Hardin was not an agent authorized to issue policies for such company. Einsel, defendant's issuing agent, testified that Hardin "brokered" business but did not write policies; that he maintained his own separate office, did not have a desk in Einsel's office, but was "in and out"; that Hardin would bring Einsel applications for

insurance and that Einsel would write the policies and send them out by him; that Hardin also had policies issued by other agents and other companies.

Concerning the issuance of the policy in question, plaintiff's Harshberger testified that prior to its issuance he and Joe Harding, president of the plaintiff corporation, had a conversation with Hardin. They decided that insurance coverage on contents should be increased and, because there was no insurance at all on the paint shop, they at that time ordered from Hardin a policy to insure the contents of the paint shop. The witness said they "didn't specify any company, just said we wanted $1500 insurance"; that they did not give Hardin a description of the building in which the contents were located, but "the only thing I had to do was just tell him it was our paint shop we wanted covered." Thereafter Hardin procured the policy and delivered it to Harshberger. Harshberger said he knew the rate was supposed to be higher on the paint shop than on the main building, but that he did not ever examine this policy to check the rates or description of the property insured, but testified that "I placed my faith in Doc Hardin."

Harshberger also testified that at the time of the loss plaintiff had policies of insurance issued by three different insurance companies on the contents of the main building in total amount of $13,500, that the premises in those policies were described as a one-story concrete block composition roof building located at 1220 West 13th Street, and that such description was the same as that in the policy in question except that these other policies did not refer to spraying equipment.

Defendant's agent, Einsel, said he also was familiar with plaintiff's premises, having previously been there to discuss insurance with Harshberger and other officers of the plaintiff corporation (although he had no policies of insurance with plaintiff prior to the issuance of the policy in question). He also had advised plaintiff's offi-

cers to build a separate paint shop because the use of paint and spray equipment in the main building would raise the rate and might make it completely unacceptable as an insurance risk. He testified that at that time there was some conversation about insurance on the paint shop, and plaintiff's manager, Harshberger, "said it was too high, they wouldn't carry it. They wouldn't have to carry it, it wouldn't be enough." He testified that a Missouri Inspection Bureau rate card was (by the time the policy in question was written) issued for plaintiff's property. This card designated the main building as 1220 West 13th Street and fixed a rate of 2.02, and a spray room as rear 1222 West 13th Street, with a rate of 2.48. He stated he would not have written a policy on the paint shop.

In regard to the issuance of the policy in question, Einsel testified that the broker Hardin called him on the phone, said plaintiff had some extra equipment, and ordered a policy in the amount of $1,500. He said that Hardin "didn't specify paint shop. * * * He specified building. *The contents of the main building.*" For the purpose of determining the premium Einsel used the rate 2.02, the rate fixed by the Missouri Inspection Bureau for the main building. The policy was typed in Einsel's office, and he did not discuss it with any of plaintiff's officers but dealt with Hardin only. Hardin (who incidentally was not called as a witness by either party) collected the policy premium and paid Einsel.

■ In cases (like this) tried by the court sitting as a jury, our duty is to review the law and evidence, as in equity, and reach our own conclusions. In so doing, however, we accord deference to the findings of the trial court and its opportunity to judge of the credibility of witnesses, and we will set aside the judgment below only if it is clearly erroneous. Browder v. Milla, Mo.App., 296 S.W.2d 502, 505; Stewart v. Droste, Mo.App., 294 S.W.2d 600, 602.

What was the actual contract between the parties? Did they both intend to insure the same property? And if so, which property, the contents of the "paint building" or the contents of the "main building"?

The only evidence which plaintiff offers on this question is (a) the written provisions of the policy itself and (b) the statement of Harshberger that the broker Hardin was directed to procure insurance on the paint shop. Taking first the actual language of the policy, it is held that, absent fraud or mistake, where there is some question as to which of two buildings was contemplated in locating the property to be insured, the court will use the description of the contract as controlling. Appleman, Insurance Law and Practice, vol. 4, ch. 117, § 2353, p. 220. While we do not need to anchor our opinion upon a statement so broad and unqualified, still it must of course be recognized that the language of the policy, issued by one of the parties and retained by the other for a considerable length of time, is of great importance. It would appear that the policy description of the building in which the insured contents were located more aptly fits the main building than the paint shop. The policy mentions a composition roof. The main building has such. The paint shop has a "framework wooden type roof." The building mentioned in the policy is occupied as a "Furniture Manufacture and repair." The main building is devoted exclusively to this purpose. The paint shop hardly fits this description; it is used exclusively for painting. The address, 1220 West 13th Street, fits more specifically the main building than the paint shop, which sits to the rear and one side on an irregular tract of ground. The premium rate of the policy was compatible with the fixed rate for the main building. The rate for the paint shop was higher, and plaintiff's manager knew this. Appellant attaches significance to the fact that the policy mentions spraying equipment, whereas, by testimony of plaintiff's

witness, the main building contained none. Einsel, defendant's witness, testified that *having* painting equipment in the main building would not result in increased premium, but *using* it there would. We think it can hardly be said that the presence of such equipment is *exclusively* descriptive of the paint shop. But if the mention of spraying equipment has special significance, then of equal importance in reverse is the fact that the policy mentions machinery and the paint shop contained no machinery.

As to evidence that plaintiff requested insurance on the paint shop, this comes from the testimony of Harshberger alone. Absent his declaration that Hardin was so instructed, plaintiff has nothing to sustain such contention. Yet, under the circumstances of this case, the trial court, to whose judgment of credibility we defer, could have refused to believe the witness in this statement. Pertinent to such question (of credibility) and entirely divorced from the legal question of whether or not the retention of the policy for more than a year without protest or rejection constituted an acceptance under the circumstances,[1] is the fact, to be weighed by the trier of the fact, that Harshberger, who had other policies of insurance on the contents of the main building and knew that the rate for the paint shop was greater, "sat on" this policy without protest or request from the date he received it until after the fire a year later.

But, passing the question of credibility as a reason why the court might (or might not) have made its determination, and assuming that plaintiff's Harshberger did instruct broker Hardin to procure insurance on the contents of the paint building, but that Hardin ordered from the defendant a policy on the contents of the main building (as Einsel said he did), then unless Hardin was defendant's agent the defendant would not be responsible for a policy of insurance on property it was never requested to insure. We therefore consider the question of agency.

Whether an insurance broker represents the insured or insurer depends upon the circumstances. The usual and general statement is that a broker is primarily the agent of the person who first employs him, and where he is employed to procure insurance he is the agent of the person for whom the insurance is procured in so far as matters connected with the procurement are concerned. Absent some special condition or circumstance in the particular case, he is not the agent of the insurer; and he may not be converted into an agent for the insurance company without some action on the part of the company, or the existence of some facts from which his authority to represent it may be fairly inferred. 44 C.J.S. Insurance § 140, pp. 799–800, 801; 29 Am. Jur., Insurance, § 91, pp. 114–115; Knight v. Merchants & Manufacturers Insurance Co. of New York, 239 Mo.App. 107, 188 S.W.2d 77, and cases cited at loc. cit. 82; Buck v. Stuyvesant Ins. Co., 209 Mo.App. 302, 237 S.W. 840.

Applying these principles to the present case: The insured requested Hardin to procure this insurance, which he did. There are no facts or circumstances in the evidence which require a finding that Hardin was authorized by or acting for the insurer. Hence, Hardin's act in ordering from the defendant's issuing agent a policy covering the contents of the main building was the act of the plaintiff, and if there was a mistake in designating the particular property which it was desired to cover by the policy, such was the mistake of the plaintiff and not of the defendant insurer. Appleman, Insurance Law and Practice, vol. 4, ch. 115, § 2292, p. 149, vol. 16, ch. 306, § 8728, p. 158; ch. 320, § 9145, p. 696. Most of appellant's cited authorities deal with situations where a mistake in locating or describing the property was made by the *defendant's* agent, and they are not applicable.

A further contention of plaintiff-appellant is that because the insurer did not

---

1. See Neuner v. Gove, Mo.App., 133 S. W.2d 689, and cases cited at loc. cit. 694; Buhlinger v. United Firemen's Ins. Co., Mo.App., 16 S.W.2d 699, 701.

tender to plaintiff the unearned premium it is estopped to assert that the policy did not cover the loss. While it is true that refund of premiums within a reasonable time after discovery of the facts on which the defense is based is a condition precedent to the assertion of a defense of *forfeiture* or *invalidity* of a policy, and that by failure to make such timely tender the insurer is precluded and estopped from interposing such defense,[2] in *this* case the defense was *not* that the policy was void or forfeited, but that it actually insured *other property* of the plaintiff situated at another location, which insurance was still in force and effect. In such case it was not incumbent upon defendant to refund the premium.

We conclude that there was ample and substantial evidence to sustain the finding of the trial court and that the judgment was for the right party. The judgment is affirmed.

McDOWELL, P. J., and STONE, J., concur.

---

2. 45 C.J.S. Insurance, § 716b(1), pp. 696–697; Cox v. Owensville Mut. Ben. Aid Ass'n, Mo.App., 185 S.W.2d 28; Morrison v. Fidelity-Phenix Fire Ins. Co., Mo.App., 71 S.W.2d 816.